ROLAND & WHYTOCK *vs.* REX MANUFACTURING CO.

APRIL 11, 1928.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

SWEETLAND, C. J. This is an action of the case in assumpsit to recover damages for the alleged breach by the defendant of a contract between the parties.

The case was tried before a justice of the Superior Court sitting with a jury and resulted in a verdict for the plaintiffs. The defendant duly filed its motion for new trial which was denied by the justice. The case is before us upon the defendant's exception to the decision of the justice upon the motion for new trial, and upon certain exceptions taken by the defendant to rulings of the justice made in the course of the trial.

The plaintiff copartnership and the defendant corporation are each manufacturers in Providence. In September, 1924, the defendant contracted with the plaintiffs for the manufacture and delivery by the plaintiffs to the defendant of 5,000 gross of screw eyes of a particular dimension, to be used by the defendant for a special purpose in connection with an attachment to be placed upon fountain pens. The screw eyes were to be very small, being about $\frac{1}{4}$ inch long and about 83/1000 of an inch in diameter. The price was to be 35 cents per gross. Shortly thereafter the defendant

increased its order from 5,000 gross to 10,000 gross. Before the plaintiff had completed the manufacture and delivery of the first 5,000 gross of screw eyes the defendant repudiated the contract and refused acceptance of any of the screw eyes beyond the first 5,000 gross. The defendant based its action in that regard upon the claim that an unreasonably large number of the screw eyes delivered was defective. Whether the repudiation of the contract by the defendant was justified became one of the issues at the trial. The jury's verdict was adverse to the defendant's claim. The jury's finding upon that issue has been approved by the justice. After an examination of the evidence we are unwilling to disturb the decision of the justice in that regard.

The letter of the defendant to the plaintiff by means of which the defendant claimed that it rescinded the contract is somewhat ambiguous in language, and the plaintiff continued to manufacture the screw eyes to the extent of 2,800 gross which the defendant has refused to accept. Later the plaintiffs concluded that they would treat the letter as a repudiation of the contract and ceased to manufacture the screw eyes.

Upon its exception to the refusal of the justice to direct a verdict in its favor the defendant now urges that, as the plaintiffs did not acquiesce in the defendant's repudiation when it was made, the plaintiffs were obliged in law to go on and complete their part of the contract, and that they would not be entitled to sue for their damages until they had completed the manufacture of the 10,000 gross of screw eyes, and had made a tender of delivery of the same to the defendant, which had been refused. The defendant has vigorously urged this claim before us. The record discloses, however, that the defendant made no contention of that nature before the justice in the Superior Court. We do not regard the position of the defendant as sound. Such a rule applied in this case would tend to increase the plaintiffs' damages without advantage to either party. In support of its contention the defendant relies upon the authority of

certain English cases. Its claim is contrary to the American rule, laid down in *Collyer & Co.* v. *Moulton,* 9 R. I. 90, that a party ordering work to be done may at any time countermand the order, and the other party to the contract can not then go on and complete the work and claim the whole price, but will only be entitled to be paid for his part performance and given compensation for his loss on the remainder of the contract.

The other exceptions of the defendant relate to its objection to the rulings of the justice, and to the instruction of the justice to the jury as to the measure of damages in the case. The justice permitted the plaintiffs to introduce evidence as to what would be their profits on the 5,000 gross of screw eyes which were not manufactured at the time the defendant repudiated the contract; the justice also instructed the jury as follows: "The rule" (with reference to the measure of damages) "would be, Gentlemen, as to what profit the plaintiff would have made if it had been allowed to carry out the original contract. The rule has been stated in a different way in some cases, that it is the difference in the value of the articles, the market value of the articles at the time of the rescission of the contract and the cost of manufacture. Strangely enough the only testimony that we have in the case as to market value seems to be 35 cents a gross. If you can apply a market value to an article of this kind, that would be the market value. So there is no difference in the result you arrive at whichever rule you apply."

It is the defendant's contention that as to the 2,800 gross of screw eyes which the plaintiffs manufactured after the defendant repudiated the contract, if recovery should be permitted in any event, the damages of the plaintiffs would be the difference between the market value and the contract price, and that only as to the remaining 2,200 gross, which the plaintiff did not manufacture, would the damages be measured by the difference between the cost of manufacture and the contract price which would represent the amount of the plaintiffs' profit.

From the charge of the justice to which the defendant excepted it must be held that the justice instructed the jury, that if they found the defendant's repudiation of the contract to be unjustified, then in the circumstances of the case the measure of the plaintiffs' damage would be the amount of the plaintiffs' prospective profit arising from the manufacture of the last 5,000 gross of screw eyes. We find no error in this instruction. The law as to damages in this case is governed by the provisions of the uniform sales act contained in subsection (4), Section 2, Chapter 309, Gen. Laws 1923, which are as follows: "(4) If, while labor or expense of material amount are necessary on the part of the seller to enable him to fulfill his obligations under the contract to sell or the sale, the buyer repudiates the contract or the sale, or notifies the seller to proceed no further therewith, the buyer shall be liable to the seller for no greater damages than the seller would have suffered if he did nothing towards carrying out the contract or the sale after receiving notice of the buyer's repudiation or countermand. The profit the seller would have made if the contract or the sale had been fully performed shall be considered in estimating such damages." No contention is now made by the plaintiffs that the defendant's letter, although somewhat ambiguous in its terms, should not be treated as a repudiation of the contract in question. When the plaintiffs received notice of such repudiation none of the last 5,000 gross of the screw eyes had been manufactured. Thereafter under the provisions of the statute the plaintiffs were not entitled to proceed with the manufacture of the last 5,000 gross and increase the amount of their damages to the extent of the contract price, which would include not only the profits but also the cost of material and labor. A finding is warranted that after the repudiation by the defendant if the plaintiffs had done nothing further towards carrying out the contract their damages would have been solely the difference between the cost of manufacture of the last 5,000 gross and the contract price which difference represented their profit.

The plaintiffs did continue to manufacture to the extent of 2,800 gross. They now admit such action was not well advised and they make no claim for damages as to the goods so manufactured beyond the amount of their prospective profit under the contract. The fact that the plaintiffs continued to manufacture after notice of the repudiation has no bearing upon this case. Between the parties such action on the part of the plaintiffs is an immaterial matter.

The defendant claims that as to the 2,800 gross manufactured by the plaintiffs the measure of their damages is the difference between the market price and the contract price. This claim is without merit. It is apparently made in reliance upon subsection (3), Section 2, Chapter 309, Gen. Laws, 1923, which is as follows: "(3) Where there is an available market for the goods in question the measure of damages is, in the absence of special circumstances showing proximate damage of a greater amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept." Subsection (3) of the statute is not applicable in the facts of this case. First because these goods were useful solely for a special purpose, and the evidence would not warrant a finding that there was an available market for them, or that they had a market or current price. Moreover a fundamental objection to the defendant's claim is that subsection (3) does not relate to the damages arising from a buyer's repudiation of a contract for the manufacture of goods when such repudiation is made before the goods have been manufactured. That situation is clearly governed by the provisions of subsection (4).

All of the defendant's exceptions are overruled and the case is remitted to the Superior Court for the entry of judgment on the verdict.

*Murdock & Tillinghast*, for plaintiffs.
*William A. Gunning*, for defendant.